[Cite as *State v. Dixon*, 2020-Ohio-2741.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 28507 |
| | : | |
| v. | : | Trial Court Case No. 2005-CR-4213/4 |
| | : | |
| WILLIAM DIXON | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 1st day of May, 2020.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by SARAH E. HUTNIK, Atty. Reg. No. 0095900, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellee

WILLIAM DIXON, Inmate No. 529-169, Toledo Correctional Institution, P.O. Box 80033, Toledo, Ohio 43608
    Defendant-Appellant, Pro Se

. . . . . . . . . . . . .

TUCKER, P.J.

{¶ 1} Defendant-appellant, William Dixon, filed a petition for postconviction relief on July 29, 2019, which the trial court denied in an order entered on August 14, 2019. In this appeal, Dixon argues that the trial court misconstrued his petition and erred by denying it pursuant to the doctrine of res judicata. Although the trial court arguably did misconstrue the basis of the petition, we hold nevertheless that the court did not err by denying it. The court's order of August 14, 2019, is therefore affirmed.

## I. Facts and Procedural History

{¶ 2} In June 2005, Shoshana Harbor resided on Lynnaway Drive in Dayton with her husband and one of her three sons. On the afternoon of June 24, 2005, Harbor heard her doorbell ring, and upon opening the door, she encountered a woman later identified as Devon Schultz. Schultz asked to use a telephone, claiming that her car had run out of fuel. Harbor assented to Schultz's request, and after closing the door, she walked into her kitchen to retrieve her telephone. When Harbor returned, she found Schultz inside the house.

{¶ 3} Despite her surprise, Harbor handed the telephone to Schultz, who then drew a gun and pointed it at Harbor's head. Harbor unsuccessfully attempted to take the gun from Schultz, and Schultz shot Harbor in her left leg and chest. Even though she had been wounded, Harbor was able to push Schultz out of the house through the front door, at which point Schultz fled.

{¶ 4} Harbor followed Schultz outside, shouting for help, and encountered two men there, who were later identified as Dixon and Peter Roach. She asked Dixon and Roach to pursue Schultz, and seemingly in response to her request, the two men ran off in the

direction that Schultz had taken. Dixon, Roach and Schultz, however, had planned to rob Harbor with the assistance of a fourth person, Angela Walton; using her own vehicle, Walton served as the group's getaway driver.

{¶ 5} Harbor's son and several of her neighbors witnessed various parts of the incident, and the first police officers to respond to the scene captured video of Walton's vehicle with their cruiser's camera system. Dixon, Schultz and Walton fled to Arkansas, though Schultz and Walton later travelled to Maryland, where they were arrested in October 2005. Shortly afterward, Roach was arrested in Springfield, Ohio, and Dixon was subsequently arrested in Arkansas in March 2006.

{¶ 6} Dixon, Roach, Schultz and Walton were charged with complicity in the commission of aggravated robbery, complicity in the commission of aggravated burglary, and complicity in the commission of felonious assault. A firearm specification was attached to each of the charges. Roach, Schultz and Walton pleaded guilty to the charges against them, but Dixon chose to take his case to trial.

{¶ 7} Beginning on August 8, 2006, the case was tried to a jury. Among other things, the evidence presented at trial indicated that Dixon had planned the robbery; purchased the clothing worn by Schultz; provided Schultz with the gun she used; purchased ammunition for the gun; and prepared a map of the area surrounding Harbor's residence. The trial concluded on August 9, 2006, and on August 11, 2006, the jury returned verdicts of guilty on all charges.

{¶ 8} At sentencing on September 1, 2006, the trial court sentenced Dixon to serve terms in prison of 10 years on the charge of complicity to commit aggravated robbery, 10 years on the charge of complicity to commit aggravated burglary, eight years on the

charge of complicity to commit felonious assault, and three years for each of the firearm specifications. The court ordered that the terms of 10 years be served concurrently; merged the firearm specifications into a single, three-year specification; and ordered that the eight-year term for complicity to commit felonious assault and the three-year term for the merged firearm specifications be served consecutively. Thus, the aggregate sentence was 21 years.

{¶ 9} Dixon brought a direct appeal from his convictions, which we affirmed in our opinion of February 22, 2008. *State v. Dixon*, 2d Dist. Montgomery No. 21823, 2008-Ohio-755, ¶ 1-5 and 53. During the pendency of that appeal, Dixon petitioned the trial court for postconviction relief, and the trial court denied the petition in a decision entered on July 27, 2009. Dixon appealed the decision, which we affirmed in our opinion of June 11, 2010. *State v. Dixon*, 2d Dist. Montgomery No. 23592, 2010-Ohio-2635, ¶ 7 and 28. Between June 2010 and May 2018, four more appeals followed, as well as several more petitions for postconviction relief.[1] *See State v. Dixon*, 2d Dist. Montgomery No. 27991, 2019-Ohio-230, ¶ 5-12.

{¶ 10} On July 29, 2019, Dixon filed another petition for postconviction relief, and the trial court denied the petition in its order of August 14, 2019. Representing himself, Dixon timely filed a notice of appeal to this court on August 27, 2019, after which he and the State were granted several extensions of time to submit their respective briefs. With briefing now complete, we may consider Dixon's arguments.

## II. Analysis

---

[1] Dixon filed more than four notices of appeal between June 2010 and May 2018, but many of these were dismissed.

**{¶ 11}** Dixon has not complied with App.R. 16(A). He filed a document entitled "Motion to File Brief" on September 13, 2019, and he thereafter filed a document entitled "Motion for Leave: [sic] to Amend Brief" on October 25, 2019. By order of November 26, 2019, we accepted these documents together as Dixon's brief.[2] Neither document presents any assignments of error, but Dixon's arguments converge on a single contention, which is that the trial court erred by denying his petition for postconviction relief. We take that contention, then, to be Dixon's assignment of error.

**{¶ 12}** In his petition, according to the trial court, "Dixon argue[d] that his sentence was void" as the result of the court's "fail[ure] to merge allied offenses" and the court's improper "impos[ition] [of] consecutive [prison] [term]s." Order Denying Petition for Postconviction Relief 1, Aug. 14, 2019. Because the court had previously considered and rejected the same arguments, it held that the petition was "barred by [the doctrine of] res judicata." *Id.*

**{¶ 13}** In the conclusion to the petition, Dixon maintained that "[i]t's clear that the court must [void] [brackets sic] the sentence, correct it, [punctuation sic] to less[e]r offense, [and] re-sentence him under proper [statute]s—which should then invoke [a]llied offense [sic]." Defendant's Petition for Postconviction Relief 2, July 29, 2019. The trial court, understandably, seems to have interpreted the petition in light of Dixon's reference to the merger of allied offenses, but Dixon also emphasized his belief in his "actual innocence." *Id.* at 1-2. On that point, Dixon argued he was improperly convicted because the robbery did not succeed, meaning in his view that he should have been

---

[2] The State filed its brief on February 12, 2020, and Dixon filed a brief in reply on February 26, 2020.

convicted of complicity in the commission of attempted aggravated robbery, rather than complicity in the commission of aggravated robbery; he argued that he was improperly convicted on the merged firearm specifications because he personally did not threaten Harbor with a firearm. *See id.* at 1-2. He did not address his convictions for complicity in the commission of aggravated burglary and complicity in the commission of felonious assault.

{¶ 14} Here, in the first of the two documents we accepted as Dixon's brief, and in his reply to the State's response, Dixon argues that his petition "ha[d] <u>nothing</u> to do with [a failure to merge] allied offense[s]," but was instead predicated on a claim of actual innocence, which he insists is "exempt from [application of the doctrine of] (res judicata)." (Emphasis and parentheses sic.) *See* Appellant's Brief, Part One 1, Sept. 13, 2019; *see also* Appellant's Reply Brief 1, Feb. 26, 2020. In the second of the two documents we accepted as his brief, Dixon argues that because "the trial court sentenced [him] to crimes that never happen[ed] and failed to follow directives of crimes that did [happen]," the court lost its "subject matter jurisdiction" over his case. *See* Appellant's Brief, Part Two 1, Oct. 25, 2019. He offers no discussion of his convictions for complicity in the commission of aggravated burglary and complicity in the commission of felonious assault.

{¶ 15} Essentially, Dixon argues that he has been improperly convicted, and wrongfully imprisoned, because the incident at Shoshana Harbor's house in June 2005 "was a failed robbery" during which he himself did not brandish or use a firearm. *See* Appellant's Brief, Part Two 2. That is, Dixon claims he is actually innocent because "the [e]lements of [a]ggravated [r]obbery never took place, [a]nd the (3yr) [sic] [g]un spec. [sic]

never took place."[3]    Appellant's Brief, Part One 4; Appellant's Brief, Part Two 3-5; Appellant's Reply 3-5 and 7-8.

{¶ 16} Dixon fundamentally misapprehends the provisions of R.C. 2923.03(F) and 2911.01(A)(1).   Under the former statute, a person who "is guilty of complicity" in the commission of an offense "shall be prosecuted and punished <u>as if he were a principal offender</u>."  (Emphasis added.)   Consequently, regardless of the fact that "Dixon never personally [b]randished a [g]un" in Harbor's presence, given that "Schultz alone [entered Harbor's] house," Dixon was properly convicted of a three-year firearm specification under R.C. 2941.145.   Appellant's Brief, Part One 3.   Similarly, regardless of the fact that Dixon and his associates did not actually succeed in their attempt to commit a theft offense, he was properly convicted of complicity in the commission of aggravated robbery. Pursuant to R.C. 2911.01(A)(1), a person is guilty of aggravated robbery if he has "a deadly weapon on or about [his] person or under [his] control" and either "display[s] the weapon, brandish[es] it, indicate[s] that [he] possesses it, or use[s] it" while "<u>attempting</u> or committing a theft offense," or while "<u>fleeing immediately after the attempt</u> or offense." (Emphasis added.)

{¶ 17} Concomitantly, Dixon's argument regarding res judicata lacks merit. According to "the doctrine of res judicata, a valid final judgment on the merits bars all

---

[3] Although Dixon offers no analysis specifically directed to his convictions for complicity in the commission of aggravated burglary and complicity in the commission of felonious assault, he would presumably argue that he should not have been convicted of complicity in the commission of aggravated burglary because he personally did not enter Harbor's house, and that he should not have been convicted of complicity in the commission of felonious assault because he personally did not cause or attempt to cause physical harm to Harbor.   *See* R.C. 2911.11(A) and 2903.11(A).

subsequent actions based on any claim arising out of the transaction or occurrence that was the subject matter of the previous action." *State v. Collins*, 2d Dist. Montgomery No. 25612, 2013-Ohio-3645, ¶ 9, citing *Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 653 N.E.2d 226 (1995). The doctrine "applies to any issue that was raised or could have been raised in a criminal defendant's [direct] appeal from his conviction or any other final appealable order," including claims that were raised or could have been raised in a defendant's first petition for postconviction relief. *Id.* at ¶ 14, citing *State v. Perry*, 10 Ohio St.2d 175, 226 N.E.2d 104 (1967); *State v. McCain*, 2d Dist. Montgomery No. 27195, 2017-Ohio-7518, ¶ 35.

**{¶ 18}** Dixon contends that his petition of July 29, 2019, was exempt from application of the doctrine because the trial court "illegally sentence[d] [him] [for] a crime [sic] that never took place," making "the entire indictment" and his corresponding sentences "void." *See* Appellant's Brief, Part Two 4. As we have indicated, however, Dixon's convictions were not improper, meaning that his sentences are not void, and "[a]lthough the doctrine of res judicata does not preclude review of a void sentence, [the doctrine] still applies to other aspects of the merits of a conviction, including the determination of guilt and the lawful elements of the ensuing sentence[s]." *State v. Fischer*, 128 Ohio St.3d 92, 2010-Ohio-6238, 942 N.E.2d 332, ¶ 1. Regardless of whether the trial court accurately characterized the basis of Dixon's petition, the issues he raised were subject to the doctrine of res judicata because he had already raised them, or could have raised them, in his six previous appeals or in his several previous petitions for postconviction relief, and no exception to the doctrine applies in this instance. Dixon's assignment of error is overruled.

## III. Conclusion

**{¶ 19}** The trial court arguably misconstrued the arguments offered by Dixon in the petition for postconviction relief he filed on July 29, 2019, but the court nevertheless did not err by dismissing the petition pursuant to the doctrine of res judicata.   Therefore, the trial court's order of August 14, 2019, is affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and WELBAUM, J., concur.

Copies sent to:

Mathias H. Heck, Jr.
Sarah E. Hutnik
William Dixon
Hon. Steven K. Dankof